NIEMEYER, Circuit Judge,
dissenting:
The Pittston Company had its day in court in the Northern District of Alabama in connection with its obligation, for the years 1993, 1994, and onward, to pay “premiums” or “taxes” to the United Mine Workers of America Combined Benefit Fund (the “Combined Fund”), created under 26 U.S.C. § 9702. It should not now, in this action, be permitted to relitigate its obligation in connection with those same transactions based on new theories. As *707 explained further below, I believe that the district court was correct in determining that Pittston’s claim in this case to declare the premiums or taxes unconstitutional is barred by principles of res judicata.
More fundamentally, however, we do not have jurisdiction over this action, which Pittston characterizes as a tax refund action. Section 1346(a)(1) of Title 28, on which Pittston relies for jurisdiction, waives sovereign immunity for tax refund suits by conferring jurisdiction on district courts over claims against the United States for the recovery of taxes. Because Pittston paid no taxes to the United States, it cannot “recover” taxes from the United States under § 1346(a)(1).
For both of these reasons, I would affirm.
I
Litigation of this dispute over Combined Fund premiums began in April 1994 when Pittston and other coal operators brought suit in the Northern District of Alabama, challenging the computation of premiums they were obligated to pay the Combined Fund under the Coal Industry Retiree Health Benefit Act (the “Coal Act”), 26 U.S.C. § 9701 et seq. In that action, Pitt-ston alleged that the United States erroneously computed the amounts payable to the Combined Fund under the Coal Act and that, as a result, it was required “to pay a premium approximately 10% greater than that authorized under the [Coal] Act.” It requested that the United States be ordered to “recompute the initial premium [for 1993] and all subsequent premiums” payable to the Combined Fund. The Alabama district court agreed with Pittston and ordered the United States to recompute the premiums payable by Pittston to the Combined Fund and directed the United States to notify the Combined Fund “of the premium amount that the Combined Fund should have assessed” for the years 1993 and 1994. At that point, the Combined Fund had not been named a defendant in the Alabama action even though it had assessed and collected the premiums required to be paid. The decision in the Alabama case was appealed to the Eleventh Circuit, which affirmed. See National Coal Ass’n v. Chater, 81 F.3d 1077 (11th Cir.1996). Thereafter, the plaintiffs in the Alabama action brought suit against the Combined Fund, seeking a refund, with interest, of the excess payments. After Pittston voluntarily withdrew from that action, its co-plaintiffs won a judgment for a refund of the amounts sought. See National Mining Ass’n v. Apfel, No. 96-1385 (N.D.Ala. Feb. 10,1999).
In connection with the same premiums paid for the same years, Pittston filed the action in this case, amplifying its claim of illegality by asserting constitutional claims. In Count I of this action, Pittston challenges the constitutionality of the Coal Act because it “places government powers and federal revenues in the hands of a private entity,” the trustees of the Combined Fund. On the basis of these allegations, Pittston requests “a refund” from the United States of all “taxes or other sums” ever paid by Pittston to the Combined Fund. In Count II, Pittston alleges that the United States erroneously calculated the amounts that Pittston was required to pay to the Combined Fund for the years 1993, 1994, and 1995, requesting “a refund” from the United States of all “taxes or other sums” paid by Pittston to the Combined Fund “in excess of the statutory formula” for the years 1993-95. Following the judgment in favor of Pittston’s former co-plaintiffs in the second Alabama suit and prior to this appeal, Count II of this action was settled, leaving only Count I for our consideration. On this count, the district court dismissed the claim because it arose out of the same transaction as the claim in the first Alabama case and therefore was barred by res judicata. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1316 (4th Cir.1996) (“Generally, claims are part of the same cause of action when they arise out of the same transaction or series *708 of transactions or the same core of operative facts” (internal citations omitted)).
II
I turn first to our subject matter jurisdiction. Pittston invokes the tax refund statute as the basis for this suit, styling its action as one to recover taxes from the United States. The United States, on the other hand, contends that the tax refund statute, 28 U.S.C. § 1346(a)(1), does not vest district courts with jurisdiction over claims for the “restitution” of assessments that are neither paid to the United States nor intended to support the United States. Section 1346(a)(1) provides that the district courts shall have jurisdiction of:
Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.
To support its argument that we have jurisdiction over its suit against the United States, Pittston relies on our decision in In re Leckie Smokeless Coal Co., 99 F.3d 573, 583 (4th Cir.1996) (holding that Coal Act premiums are taxes). It argues that because premiums are taxes, it can sue the United States under 28 U.S.C. § 1346(a)(1) for a refund of taxes.
While we did hold in Leckie that Coal Act premiums are taxes, this holding does not end the inquiry here whether we have jurisdiction under § 1346(a)(1). Our decision in Leckie established that Coal Act premiums are taxes for purposes of the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Similarly, we have determined that Coal Act premiums are taxes entitled to priority over unsecured claims under the Bankruptcy Code, 11 U.S.C. §§ 503, 507. See Adventure Resources, Inc. v. Holland, 137 F.3d 786, 794 (4th Cir.1998). However, we have not, thus far, determined whether Coal Act premiums are subject to recovery under § 1346(a)(1) as taxes “erroneously or illegally assessed or collected.” This determination must be made, just as our prior determinations were made, by taking into consideration the context, policies, and objectives of the pertinent statutes — here, the tax refund statute and the Coal Act. See King v. St. Vincent’s Hospital, 502 U.S. 215, 221 & n. 10, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (the meaning of statutory term depends on context); United States v. Reorganized C F & I Fabricators of Utah, Inc., 518 U.S. 213, 220-24, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996) (the term “tax” may have different meanings in the Internal Revenue Code and the Bankruptcy Code).
Accepting for purposes of discussion that the premiums paid to the Combined Fund are taxes for purposes of 28 U.S.C. § 1346(a)(1), a suit based on that provision nevertheless must be against the United States for the recovery from the United States Treasury of such tax payments. The suit before us is not for such a refund. The United States neither collected Coal Act payments nor received them, and accordingly, a money judgment of the sort sought by Pittston would effect a recovery from the government of something it does not have. Such an action could only be a general damage suit, not a refund suit for the recovery of taxes paid, i.e. for moneys “had and received.” To allow a general damage action against the United States would be inconsistent with both the structure and the purpose of 28 U.S.C. § 1346(a)(1). The Supreme Court has explained that § 1346(a)(1) was intended to “mirror” the common-law action of as-sumpsit brought against private tax collectors for monies “had and received” by the collector. United States v. Williams, 514 U.S. 527, 532, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); see also Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). The Court of Federal Claims, which shares jurisdiction over tax refund suits, has similarly referred to the *709 tax refund suits within its jurisdiction as “those in which ‘the government has the citizen’s money in its pocket.’ ” Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002, 1008 (1967) (quoting Clapp, v. United States, 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954)) (emphasis added). Moreover, the statutory scheme governing tax refund suits confirms that § 1346 is intended only as a vehicle to recover funds “had and received” by the United States Treasury. This is made clear by the requirement that any plaintiff bringing suit under this section first file an administrative claim with the Secretary of the Treasury. See 26 U.S.C. § 7422.
By interpreting § 1346(a)(1) to provide jurisdiction for this claim by Pittston, the majority expands the waiver of sovereign immunity beyond that authorized by Congress. See Williams, 514 U.S. at 531, 115 S.Ct. 1611. In doing so, it violates the established principle that when a statute waives sovereign immunity, it must be strictly construed, and any ambiguity must be resolved in favor of preserving the government’s immunity from suit. See id.; Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); Schon v. United States, 759 F.2d 614, 617 (7th Cir.1985) (Section 1346(a)(1) “is a narrow waiver of sovereign immunity, and accordingly we construe it strictly”).
In enacting the Coal Act, Congress provided a means for obtaining premium refunds from the Combined Fund, the entity that collects and receives the premium payments. See 26 U.S.C. § 9706(f)(3)(A) (providing procedure for refunds by Combined Fund); 26 U.S.C. § 9702(a)(3)(C) (designating Combined Fund as a mul-tiemployer plan subject to ERISA); 29 U.S.C. § 1103(c)(2)(A)(ii) (providing for recovery by employers of payments made to ERISA multiemployer plans). This is the refund procedure to which Pittston should be remitted. Significantly, Pittston’s former co-plaintiffs in the Alabama action availed themselves of the remedies against the Combined Fund established by the Coal Act and, as noted above, succeeded in obtaining a judgment against the Combined Fund. See National Mining Ass’n, No. 96-1385 (N.DAla. Feb. 10, 1999). Limiting Pittston and other aggrieved coal operators to the remedies established by the Coal Act would be consistent with the statutory design of the Coal Act, which was meant to “provide for the continuation of a privately financed self-sufficient program.” Pub. L. No. 102-486, § 19142(b)(3), 106 Stat. 3036, 3037 (1992).
Pointing to our holding in Leckie, the majority asserts that “a decision that a [Coal Act] premium is a tax for the purposes of the Anti-Injunction and Declaratory Judgment Acts necessarily is a decision that an objection to that assessment must be litigated in a tax refund action.” Ante, at 702. But the only necessary implication of Leckie is that, since a coal operator’s objection cannot be litigated in a suit for injunctive or declaratory relief, some post-deprivation remedy must be available. Congress sensibly provided such a remedy under the Coal Act, and the federal fisc should not be exposed to a liability that Congress clearly intended would belong to the Combined Fund.
But whether or not Pittston elects to sue the Combined Fund for its refund, it cannot sue the United States for a refund, relying on 28 U.S.C. § 1346(a)(1) for its jurisdiction.
Ill
Quite apart from this fatal jurisdictional deficiency, Pittston’s suit is also barred by applicable principles of res judicata. Both the present action and the earlier action filed in the Northern District of Alabama contest the validity of the Coal Act premiums Pittston has been obligated to pay. Indeed, both actions not only challenge the obligation to pay all past premiums, but also future premiums that could be assessed.
The doctrine of res judicata is intended to promote judicial economy and finality *710 by requiring a plaintiff to advance in a single action all of the legal theories and demands for relief arising out of the same cause of action. The doctrine applies “even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action or (2) [t]o seek remedies or forms of relief not demanded in the first action.” Restatement (Second) of Judgments § 25. A challenge to the constitutionality of a statute can and should be brought in the same action alleging the misapplication of that statute. Cf. Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (Res judicata bars litigant from raising a constitutional challenge to a statutory scheme governing the conduct at issue in a prior case where the prior litigation proceeded “on the assumption by all parties and the court itself that the statute was valid”); 46 Am.Jur.2d Judgments § 569 (1994) (“[E]ven though the constitutionality of the statute is merely assumed in the earlier action, the judgment is nevertheless operative to prevent a relitigation of the same cause of action”); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4411, at 92 (“The short of the matter is that theories arising from different sources of law may be blended into a single claim that must be asserted on pain of preclusion”).
This circuit has followed the transactional approach to claim preclusion adopted by the Restatement (Second) of Judgments. See Keith v. Aldridge, 900 F.2d 736, 740 (1990). Pursuant to this approach, we have held that claim preclusion operates to bar “litigation by the plaintiff in a subsequent action of claims ‘with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.’ ” Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir.1986) (quoting Restatement (Second) of Judgments § 24).
In the earlier suit decided in Alabama, Pittston obtained a declaratory judgment in its favor and a final injunction directing the United States to recalculate the premiums payable under the Coal Act, both for past and for future premiums, and to notify the Combined Fund of the revised calculations. Pittston’s claim in this action merely seeks further relief with respect to these same transactions. Moreover, its contention that the premiums it paid were imposed pursuant to an unconstitutional statute could have been advanced in the earlier suit. Even though Pittston was the “master of its complaint” and even though its constitutional claims were available, it chose not to raise them at that time, and the claims are therefore now barred by res judicata. See Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (Res judicata bars previously available claims “regardless of whether they were asserted or determined in the prior proceeding”); Dionne v. Mayor and City Council of Baltimore, 40 F.3d 677, 683 (4th Cir.1994) (claim preclusion “forc[es] a plaintiff to raise all possible theories of recovery and to demand all desired remedies in one proceeding at peril of losing all not raised in it”).
At bottom, Pittston’s various challenges to the imposition of Coal Act premiums and its various claims for refunds arise out of the same transactions and the same set of operative facts — the payment of premiums to the Combined Fund for the periods from 1993 forward. These challenges and claims could have been presented in the Alabama action. Accordingly, they are barred from being asserted now in this action.
Therefore, both because of our lack of subject matter jurisdiction and because of the bar imposed by res judicata principles, I would affirm the judgment of the district court. I therefore respectfully dissent.