960 F.Supp. 999 (1997)
LAFAYETTE FEDERAL CREDIT UNION, et al., Plaintiffs,
v.
NATIONAL CREDIT UNION ADMIN., et al., Defendants.
Civil No. 96-1685-A.
United States District Court, E.D. Virginia, Alexandria Division.
April 16, 1997.
*1000 Christopher B. Mead, London & Mead, Washington, DC, for Plaintiffs.
Richard Parker, Assistant U.S. Attorney, Alexandria, VA, for Defendants.

MEMORANDUM OPINION
CACHERIS, Chief Judge.
This matter comes before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, Defendants' Motion is GRANTED.

Facts.
Plaintiffs are ninety-six credit unions and former holders of Preferred Capital Shares ("PCS") in now-defunct Capital Corporate Credit Union ("CapCorp").[1] CapCorp was a credit union that provided financial services only to other credit unions; it held no deposits (or shares) of individuals. Defendants are the federal agency charged with regulating credit unions and the arm of that agency appointed as conservator and liquidating agent of CapCorp. This suit arises out of Defendants' decisions to place CapCorp into conservatorship on January 31, 1995 and subsequently to liquidate CapCorp.[2] Plaintiffs claim that these actions cost them $20 million.
Specifically, Plaintiffs allege that in late 1994, the National Credit Union Association ("NCUA") concluded that: (1) Collateralized Mortgage obligations ("CMOs"), which comprised *1001 a substantial portion of CapCorp's portfolio, were risky investments; (2) CapCorp's CMO-laden portfolio threatened CapCorp's liquidity; (3) CapCorp should be liquidated; (4) priority should be given to uninsured depositors rather than to PCS holders in divvying-up liquidated assets; and (5) deposits should be frozen for 60 days. Plaintiffs contend that all of these conclusions were not supported by the information available to the NCUA and were contrary to fact.
In addition, Plaintiffs claim that the NCUA's January 31, 1995 order placing CapCorp into conservatorship was based on four reasons: (1) CapCorp was insolvent; (2) there might be a run on shares when the 60-day deposit freeze expired; (3) CapCorp had exceeded its legal borrowing limit; and (4) CapCorp's CMO portfolio was risky. Plaintiffs claim that these reasons were
erroneous, unlawful, arbitrary, and capricious, [were] based on inaccurate and incomplete information provided by NCUA staff, and [were] motivated by improper factors that NCUA should not have considered, including but not limited to an erroneous conclusion that CMOs were risky investments, that PCS holders were [somewhat culpable for] chasing yield, and that CapCorp's field of membership was too large.
Pl. Compl. at 25 ¶ 21. Moreover, Plaintiffs allege that the NCUA failed to follow Generally Accepted Accounting Practices and its own regulations in determining the value of CapCorp, id. at ¶ 22, and that information was withheld from NCUA board members, denying them the ability to make fully informed decisions. Id. at 26 ¶ 26. Finally, Plaintiffs assert that NCUA officials acted outside their regulatory and statutory authority in liquidating CapCorp, and that these officials are now seeking to cover-up their role in hiding pertinent facts from NCUA Board members. Id. at 27-28 ¶¶ 28, 30.
Plaintiffs bring this ten-count suit both in their own right and on behalf of CapCorp, alleging that Defendants acted illegally, arbitrarily, and capriciously in deciding to place CapCorp into conservatorship and to then liquidate it (Counts V-X) and that Defendants took Plaintiffs' property without due process of law (Count IV). Plaintiffs seek an equitable accounting (Count I), detinue (Count II), and restitution (Count III).[3]
Defendants now seek to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that: (1) Plaintiffs lack standing to bring this action directly; (2) only NCUA, and not Plaintiffs, may bring this action on behalf of CapCorp; (3) this Court lacks jurisdiction over Counts I-IV and VII-X because Plaintiffs have failed to meet the exhaustion requirements of the Financial Institution Reform, Recovery, and Enforcement Act ("FIRREA") and, at any rate, FIRREA bars injunctive relief; (4) this Court lacks jurisdiction over Counts V and VI because the Federal Credit Union Act requires that such claims be brought within ten days of the commencement of the conservatorship; and (5) Counts IV, VII and IX fail to state a claim upon which relief may be granted.

Standard of Review.
"The burden of proving subject matter jurisdiction on a [Fed.R.Civ.P. 12(b)(1)] motion to dismiss is on the plaintiff, the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982).
A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. Randall v. U.S., 30 F.3d 518, 522 (4th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Accordingly, such motions "should be granted only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989). When considering a motion to dismiss, the plaintiff's allegations must be taken as true. Revene v. Charles County Comm'rs, 882 F.2d *1002 870, 873 (4th Cir.1989). Therefore, a motion to dismiss under Rule 12(b)(6) should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" De Sole v. U.S., 947 F.2d 1169, 1177 (4th Cir.1991) (quoting Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 457 (4th Cir.1983)).

Analysis.
As a threshold issue, the United States, as sovereign, enjoys immunity from suit unless it waives that immunity. In general, the Administrative Procedures Act ("APA"), codified at 5 U.S.C. § 702, et seq., waives sovereign immunity for actions of the federal government. However, "[t]he APA excludes from its waiver of sovereign immunity (1) claims for money damages, (2) claims for which an adequate remedy is available elsewhere, and (3) claims seeking relief expressly or impliedly forbidden by another statute." Transohio Sav., Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 607-08 (D.C.Cir.1992). Thus, if FIRREA forbids suit, the Plaintiffs claims fail. Understandably, Plaintiffs argue that FIRREA's "sue and be sued" clause is a "broad waiver" of sovereign immunity. Tr. at 3;[4]see also Transohio, 967 F.2d at 606 (in dicta) (citing similar language in 12 U.S.C. § 1819).
The Court's analysis of FIRREA begins with the text of the statute itself. United States v. Lund, 853 F.2d 242, 245 (4th Cir. 1988). "As the Supreme Court has repeatedly recognized, when the terms of a statute are unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." Id. (quotations and citations omitted) (cataloguing cases) Section 1787 of FIRREA reads in pertinent part:
(b) Powers and duties of Board as conservator or liquidating agent....
(2) General powers
(A) Successor to credit union
The Board shall, as conservator or liquidating agent, and by operation of law, succeed to
(i) all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union;.
(B) Operate the credit union
The Board may, as conservator or liquidating agent
(i) Take over the assets of and operate the credit union with all the powers of the members or shareholders, the directors, and the officers of the credit union and shall be authorized to conduct all business of the credit union;
* * * * * *
(13) Additional rights and duties ...
(D) Limitation on judicial review
Except as otherwise provided in this subsection, no court shall have jurisdiction over
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or
(ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent.
* * * * * *
(g) Limitation on court action
Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or effect the exercise of *1003 powers or functions of the Board as a conservator or a liquidating agent.

A. Plaintiffs' failure to exhaust the administrative remedies established by FIRREA deprives this Court of subject matter jurisdiction.

The Court is guided by the plain meaning of the statute's text, as far as one is discernable. Nonetheless, it is helpful to recall the history of the Act as a backdrop to the Court's decision. In the wake of the savings and loan crisis of the late 1980s, "Congress enacted FIRREA, Pub.L. No. 101-73, 103 Stat. 183, §§ 101-1404, to establish a comprehensive scheme for efficiently administering all claims resulting from failed [financial institutions]." Brady Dev. Co., Inc. v. Resolution Trust Corp., 14 F.3d 998, 1002-03 (4th Cir.1994).[5]
Accordingly,
[t]o effectuate its goals of managing claims in an expeditious manner through an administrative process, Congress placed jurisdictional limits on the power of federal courts to review matters involving failed [institutions] under FIRREA. Congress sought to ensure that all claims undergo the administrative claims process and are under the exclusive control of the [executive branch].
Id. at 1003 (interpreting 12 U.S.C § 1821(d)(13), which is directly analogous to § 1787(b)(13)(D)).[6] In the context of Brady, this meant that plaintiffs, had they submitted their claims to the RTC process and been dissatisfied with the outcome, could have continued those claims in district court after concluding the administrative process. Id.
Plaintiffs here argue that they should be allowed to raise their claims for the first time now, since the administrative processes have run their course and CapCorp has been liquidated. However, this would clearly run counter to the Fourth Circuit's holding that "Congress sought to ensure that all claims undergo the administrative claims process." Id. (emphasis added).[7]
Plaintiffs contend that "claims" refers only to creditors of CapCorp, and that Plaintiffs, claiming to be creditors of the NCUA, are not bound by the administrative procedures.[8] However, Plaintiffs fail to explain adequately how treating them differently than other creditors serves Congress's interest in "expeditiously and fairly" adjudicating claims involving failed financial institutions under FIRREA.[9] In Tillman v. Resolution Trust *1004 Corp., the Fourth Circuit held that "Congress required persons making claims against a failed financial institution or seeking to adjudicate rights against them to present their claims first to the receiver for resolution." 37 F.3d 1032, 1035 (4th Cir.1994) (emphasis added). This holding further undercuts the differentiation Plaintiff seeks to invoke between creditors and stockholders. Similarly, while Plaintiffs assert that their claim is against the NCUA and not CapCorp, since the NCUA has stepped into CapCorp's shoes, Plaintiffs have highlighted a distinction without illustrating a difference. See Elmco Properties, Inc. v. Second Nat., Fed. Sav. Assoc., 94 F.3d 914, 920 n. 4 (4th Cir. 1996).
The Court finds that Congress evinced no intention to differentiate between claimants. Rather, as in Brady,
permitting this action to go forward would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute.... Judicial review of claims before an administrative review by the RTC would render the administrative scheme established in [FIRREA] meaningless because creditors essentially could opt out of the administrative review.
14 F.3d at 1006. This concern is equally valid regarding shareholder claims.
Plaintiffs assert in detail many acts of misfeasance and malfeasance on the part of the Defendants which would certainly preserve their case at this juncture were this case properly considered under the APA. However, in light of FIRREA's clear language,
the [C]ourt has no choice in the matter. The administrative prerequisite to suit set forth in the federal statute has been strictly construed and is considered an absolute and unwaivable jurisdictional requirement ... this court has no power to excuse a condition precedent to federal jurisdiction....
Id. at 1007 (quoting Glenborough New Mexico Assoc. v. Resolution Trust Corp., 802 F.Supp. 387, 392-93 (D.N.M.1992)).[10]
Plaintiffs point out that the Fourth Circuit has ruled that a district court had subject matter jurisdiction over a due process claim brought by a creditor of a failed institution. See Elmco, 94 F.3d 914. However, in Elmco, the plaintiff never received adequate notice of the agency takeover, and thus had been unable to avail itself of FIRREA's administrative remedies. Furthermore, the remedy ultimately ordered by the Fourth Circuit in Elmco was to vacate the district court's order holding that it lacked jurisdiction and to remand the case, not for determination before the district court, but back to the RTC for resolution via FIRREA's administrative regime. Id. at 922. That remedy is not sought here.[11]
*1005 Accordingly, this Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs have failed to meet the exhaustion requirements of FIRREA.[12]

B. Only NCUA, and not Plaintiffs, may bring this action on behalf of CapCorp.

Plaintiffs' derivative suit is barred for two reasons. First, a derivative suit must assert a right actually possessed by the corporation; there can be no suit if the corporation has somehow lost that right. Bauer v. Sweeny, 964 F.2d 305, 308 (4th Cir.1992). Here, CapCorp lost whatever rights it had after the statutory ten-day challenge period ended.[13] Second, under 12 U.S.C § 1787(b)(2)(B),
The Board may, as conservator or liquidating agent
(i) Take over the assets of and operate the credit union with all the powers of the members or shareholders, the directors, and the officers of the credit union and shall be authorized to conduct all business of the credit union;.
Absent contrary guidance from the Fourth Circuit, the Court reads this provision to vest in the conservator and liquidating agent the shareholders' former right to bring a derivative suit. Accordingly, Plaintiffs' derivative claims are dismissed.

C. Count IV fails to state a claim upon which relief may be granted.

To prove its due process claim, Plaintiffs must of course show that they were deprived of a protected interest without due process of law. See Elmco, 94 F.3d at 920. Plaintiffs claim that Defendants' actions deprived them of their property "interest in a profitable investment portfolio that was liquidated."[14] However, the heavily-regulated nature of the financial services industry and the intrusiveness of federal regulations, including those set forth in FIRREA, diminish a credit union's (and by extension, the credit union's shareholders') expectations that the government will not seize the institution's assets under FIRREA. Since "[i]t is well established that it is not a taking for the government to close an insolvent bank and appoint a receiver to take control of the bank's assets," Plaintiffs' due process claim is dismissed. See Branch v. United States, 69 F.3d 1571, 1575 (Fed.Cir.1995) (citations omitted).

Conclusion.
In sum, Plaintiffs assert a "claim or action for payment from, or ... seeking a determination of rights with respect to, the assets of a credit union for which the Board has been appointed liquidating agent. . . . ." See 12 U.S.C. § 1787(b)(13)(D)(i) accord Elmco, 94 F.3d at 919 n. 1. Since neither Plaintiffs nor CapCorp availed themselves of FIRREA's administrative processes, this Court lacks subject matter jurisdiction over their claims. In addition, Plaintiffs have failed to assert a constitutional claim upon which relief may be granted. Finally, and independent of the other grounds for dismissal, Plaintiffs' derivative claims must be dismissed because (1) CapCorp could not assert the claims itself and (2) Defendants have assumed any rights once held by CapCorp's shareholders. Accordingly, *1006 Plaintiffs have failed to assert any claims upon which relief may be granted and which are properly within the subject matter jurisdiction of this Court. Their claims are therefore DISMISSED.

ORDER
For the reasons set forth in the accompanying Memorandum Opinion, it is hereby Ordered that:
(1) Defendants' Motion to Dismiss is GRANTED and
(2) The Clerk shall forward copies of this Order to all counsel of record.
And this Order is Final.
NOTES
[1] Unlike standard shareholders, CapCorp's PCS holders could redeem their shares only after giving CapCorp one year's prior notice. Pl's. Compl. at 22 ¶ 11.
[2] Neither Plaintiffs nor CapCorp has filed an administrative challenge to these decisions. Tr. of March 28, 1997 Hearing on this Motion, at 8.
[3] One of the Plaintiffs, Marriott Employee's Federal Credit Union, apparently demanded in an October 8, 1996 letter that the NCUA bring suit under one of these causes of action. Plaintiffs allege that the NCUA has taken no action regarding such a suit, and further allege that Plaintiffs "view as futile any further efforts to persuade the NCUA to pursue legal actions directly on behalf of CapCorp." Pl's. Compl. at 21 ¶ 5.
[4] See 12 U.S.C. § 1789(a)(2):

(a) In carrying out the purposes of this subchapter, the Board may
* * * * * *
(2) sue and be sued, complain and defend, in any court of law or equity, State or Federal. ...
[5] In Brady, the Fourth Circuit held that plaintiffs in a pre-receivership suit must avail themselves of FIRREA's administrative procedures after the RTC is subsequently appointed as receiver of the defendant institution. Because the Brady plaintiffs failed to do so, the district court lacked subject matter jurisdiction.
[6] The Fourth Circuit has never interpreted FIRREA's anti-injunction clause or jurisdictional bar in a case involving a credit union. However, where FIRREA uses identical language regarding banks, savings and loans, and credit unions, the Court will follow the Fourth Circuit's interpretation of that language.
[7] Brady further held that "FIRREA's legislative history also buttresses the position that a creditor must avail himself of the administrative process first." Id. at 1005 n. 1 (citing The House Banking, Finance and Urban Affairs Committee Report on FIRREA, H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 418, reprinted in U.S.C.C.A.N. 86, 214).
[8] The Fourth Circuit has defined what comprises a claim under FIRREA:

[A]lthough Elmco's complaint technically requested declaratory judgment that it owned the funds and an order requiring the RTC to refund them, it was in essence a claim for monetary relief.... Accordingly, we have little trouble treating Elmco's facially declaratory and injunctive action as what it genuinely is, i.e., a "claim" against the assets of FSA. Elmco Properties, Inc. v. Second Nat. Fed., Sav. Assoc., 94 F.3d 914, 919 n. 1 (4th Cir.1996) (reversing the district court's denial of subject matter jurisdiction and holding that district court had jurisdiction over plaintiff's due process claim).
This definition clearly encompasses the relief sought here.
[9] The Fourth Circuit has once before dismissed an attempt to draw a similar distinction in a FIRREA case:

Elmco briefly argues that, because [the receiver] never had a right to seize the account, those funds never became FSA's "assets"; from this it concludes that its claim seeking repayment of those funds really does not affect FSA's assets, hence is not subject to FIRREA's jurisdictional bar. This claim is meritless because, even if Elmco's claim to the funds succeeds on the merits, satisfaction of the claim must necessarily be paid out of [the receiver's] assets. Accordingly, Elmco's claim seeks "payment from" FSA's assets and is subject to the jurisdictional bar. Elmco, 94 F.3d at 920 n. 4.
[10] Accord Elmco, 94 F.3d at 919 ("[FIRREA's] provisions combine to create an exhaustion requirement that.. is `absolute and unwaivable.'") (quoting Brady, 14 F.3d at 1007). But see James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1092 (D.C.Cir.1996) ("[Where the statute is silent,] we assume ... that the Administrative Procedures Act authorizes federal district courts to review the appointment [of FDIC as receiver for a national bank], unless another statute specifically precludes review of the action or the action is committed by law to agency discretion.") (citing Abbott Labs. v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); 5 U.S.C. § 701(a) (1994)). The James Madison court ultimately affirmed the district court's grant of summary judgment in favor of the government and admitted that the court's own reading of FIRREA was difficult to reconcile with the intent of Congress. See id. at 1093.

In another recent case, the Fourth Circuit has pointed out that FIRREA grants regulators "extraordinary" and "exceptionally broad" powers. See Landmark Land Co. of Okla., Inc. v. Resolution Trust Corp., 973 F.2d 283, 288 (4th Cir. 1992). In Landmark, the Fourth Circuit held that, although the bank's subsidiaries' Temporary Restraining Order ("T.R.O.") to prevent the bank from electing a new board was handed down two days before the RTC was appointed receiver of the bank, the T.R.O. was rendered invalid by FIRREA's anti-injunction clause and the subsequent appointment of the RTC.
[11] Citing Pinar v. Dole, 747 F.2d 899 (4th Cir. 1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985), which held that the detailed administrative remedies available in the Civil Service Reform Act barred judicial consideration of federal employee personnel grievances, Defendants argue that Plaintiffs are barred from seeking a remedy in this Court because FIRREA's comprehensive administrative scheme reveals congressional intent to bar district court jurisdiction. However, in the wake of Supreme Court precedent calling Pinar's holding into question, the Fourth Circuit declined to reaffirm Pinar. See Bryant v. Cheney, 924 F.2d 525 (4th Cir.1991). Likewise, the Court declines to rely on Pinar in dismissing Plaintiffs' claims.
[12] Defendants also assert that Plaintiffs' claims are barred by FIRREA's anti-injunction clause. However, since Plaintiffs allege that Defendants exceeded their statutory powers, the anti-injunction clause seems not to apply. Interpreting identical language in another FIRREA provision, the Fourth Circuit has held that

[section 1821(j)] does not immunize the RTC from all injunctions: By its terms, § 1821(j) shields only "the exercise of powers and functions" Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted or proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions. Elmco, 94 F.3d at 923 (citations omitted); accord James Madison, 82 F.3d at 1093.
[13] Neither the text of FIRREA nor its history support Plaintiffs' assertion at oral argument that the ten-day challenge period is a timing mechanism rather than an absolute jurisdictional bar. See Tr. at 17.
[14] Tr. at 5.