**LAFAYETTE FEDERAL CREDIT UNION, et al., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV.A. MJG–99–78.

United States District Court, D. Maryland.

Oct. 7, 1999.

See also 960 F.Supp. 999.

Christopher B. Mead, Mark London, London & Mead, Washington, DC, for Plaintiff.

Colette J. Winston, United States Department of Justice, Washington, DC, for Defendant.

GARBIS, District Judge.

The Court has before it Defendant's Motion to Dismiss and the materials submitted relating thereto. The Court finds that a hearing is unnecessary to resolve the motion.

## I. BACKGROUND

### A. The Parties

This suit arose out of the National Credit Union Administration's ("NCUA")[1] decisions to place Capital Corporation Federal Credit Union ("CapCorp") into conservatorship on January 31, 1995 and subsequently to liquidate CapCorp. Plaintiffs are ninety-four credit unions and former holders of Preferred Capital Shares ("PCS") in CapCorp, a now-defunct corporate federal credit union that provided financial services to other credit unions[2]

---

**1.** NCUA is the federal agency charged with regulating credit unions pursuant to the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* (1998).

**2.** CapCorp's members were credit unions that

and held no deposits or shares of individuals. Defendant is the United States of America ("Defendant" or "the Government"), being sued under the theory of vicarious liability for NCUA's alleged negligence and breach of fiduciary duties.

### B. *Lafayette I*

On November 2, 1996, in their own right and on behalf of CapCorp, plaintiffs filed a ten-count[3] suit ("Lafayette I") in the U.S. District Court for the Eastern District of Virginia against NCUA in its corporate capacity, NCUA as conservator and liquidating agent of CapCorp, and the Government as respondeat superior. Plaintiffs brought a claim under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, alleging that NCUA's regulatory decisions concerning CapCorp were " 'erroneous, unlawful, arbitrary, and capricious[.]' " *See Lafayette Federal Credit Union v. National Credit Union Admin.*, 960 F.Supp. 999, 1001 (E.D.Va.1997). Plaintiffs alleged that NCUA had made the following conclusions regarding CapCorp which were unsupported and unlawful:

- Collateralized Mortgage Obligations ("CMOs"),[4] which comprised a large portion of CapCorp's portfolio in late 1994, were risky investments;

- CapCorp's CMO-laden portfolio threatened CapCorp's liquidity;

- CapCorp should be liquidated;

- Priority should be given to uninsured depositors rather than to PCS holders in distributing CapCorp's liquidated assets; and

invested in, or made deposits in, CapCorp. CapCorp's membership consisted of approximately 450 credit unions by the end of 1994.

**3.** Plaintiffs' claims included equitable actions for an accounting, detinue, and restitution (Counts I–III); deprivation of property without compensation or due process (Count IV); and Administrative Procedure Act claims alleging that NCUA unlawfully and arbitrarily

- Deposits should be frozen for 60 days.

*Id.* at 1000–01.

The *Lafayette I* plaintiffs also claimed the following:

- The NCUA's January 31, 1995 order placing CapCorp into conservatorship was based upon four erroneous, unlawful, and arbitrary reasons: (1) CapCorp was insolvent; (2) there might be a run on shares when the 60–day deposit freeze expired; (3) CapCorp had exceeded its legal borrowing limit; and (4) CapCorp's CMO portfolio was risky.

- NCUA based its decisions upon inaccurate and incomplete information provided by NCUA staff as well as on improper factors, such as an erroneous conclusion that CMOs were risky investments, that PCS holders were somewhat culpable for chasing yield, and that CapCorp's field of membership was too large.

- NCUA failed to follow Generally Accepted Accounting Practices and its own regulations in determining the value of CapCorp, and information was withheld from NCUA Board members, denying them the ability to make fully informed decisions.

- NCUA officials acted outside their regulatory and statutory authority in liquidating CapCorp, and these officials were seeking to cover up their role in hiding pertinent facts from NCUA Board members.

*Id.* at 1001. The *Lafayette I* plaintiffs requested an equitable accounting, detinue, and restitution for approximately $20 million that NCUA's actions allegedly cost plaintiffs. *Id.* at 1000.

placed CapCorp into conservatorship (Counts V–VI), unlawfully and arbitrarily liquidated CapCorp during the conservatorship (Counts VII–VIII), and unlawfully and arbitrarily appointed itself liquidating agent of CapCorp (Counts IX–X).

**4.** CMOs are financial instruments that draw their value from pools of mortgages.

The *Lafayette I* court dismissed plaintiffs' suit based upon four grounds. First, because plaintiffs and CapCorp failed to meet the exhaustion requirements of FIRREA, the court had no subject matter jurisdiction. *Id.* at 1004–05. Second, plaintiffs failed to state a constitutional due process claim. *Id.* at 1005. Third, plaintiffs' derivative suit on CapCorp's behalf was independently barred because CapCorp had failed to challenge the conservatorship order within the statutory ten-day period under 12 U.S.C. § 1786(h)(3) and, therefore, plaintiffs could not bring an action that CapCorp itself could not assert. *Id.* Finally, defendants had assumed any rights once held by CapCorp's shareholders. *Id.*

The U.S. Court of Appeals for the Fourth Circuit affirmed the dismissal of plaintiffs' case. *See Lafayette Federal Credit Union v. National Credit Union Admin.*, 133 F.3d 915 (4th Cir.1998) (table case). The U.S. Supreme Court then denied plaintiffs' petition for certiorari. *See Lafayette Federal Credit Union v. National Credit Union Admin.*, — U.S. —, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998).

### B. *Lafayette II*

After the dismissal of the complaint in *Lafayette I*, on January 12, 1999, Plaintiffs,[5] in their own right and on behalf of CapCorp, filed a two-count complaint ("Lafayette II") under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) *et seq.* ("FTCA"), against the Government as the sole defendant. Count I presents a negligence claim, and Count II, a breach of fiduciary duty claim. Plaintiffs allege the following:

- The Government is vicariously liable for the negligence of NCUA in its corporate capacity and NCUA as conservator and liquidating agent of CapCorp.

- NCUA owed a duty of care to CapCorp and to Plaintiffs, as shareholders, to exercise reasonable care in the management of CapCorp's affairs and liquidation of its portfolio after NCUA appointed itself as conservator of CapCorp.

- NCUA staffers breached their duty of care to CapCorp and Plaintiffs by negligently, grossly negligently, arbitrarily, and in a manner unsupported by facts available to them, managing CapCorp's affairs and liquidating CapCorp's portfolio at huge losses.

- NCUA staffers failed to exercise reasonable or ordinary business judgment in managing CapCorp.

- NCUA staffers never seriously considered options that would not have required the liquidation of CapCorp's portfolio at a substantial loss.

- NCUA staffers disregarded advice from investment firms CapCorp hired to analyze CapCorp's portfolio as well as advice from NCUA's own general counsel, Robert M. Fenner, that liquidating CapCorp's portfolio was "potentially devastating."

- NCUA staffers serving on CapCorp's Conservatorship Board breached their duties of care, fiduciary duties, and duties of loyalty to CapCorp's PCS holders by preferring the interests of uninsured depositors over the interests of the PCS holders, by first promising to repay any losses to uninsured depositors out of the NCUA Share Insurance Fund ("NCUSIF"), and then liquidating CapCorp's assets for a stated purpose of preventing losses to the NCUSIF.

- NCUA staffers failed to comply with NCUA Board's directive "to explore all reasonable alternatives to outright liquidation." NCUA staffers negligently liquidated substantially all of CapCorp's portfolio within three weeks after Janu-

---

5. In *Lafayette I*, there were ninety-eight plaintiffs. The following plaintiff credit unions were parties in *Lafayette I* but are not parties in this case: (1) Chestnut Run Federal Credit Union of Wilmington, Delaware; (2) Greater New Orleans Federal Credit Union of Metairie, Louisiana; (3) Teacher Federal Credit Union of Golden Valley, Minnesota; and (4) United States Federal Credit Union of Washington, D.C.

ary 31, 1995, without consulting with the NCUA Board in violation of the Board's directives and NCUA's management practices, without following NCUA's regulations, and without following the statutory requirements for the involuntary liquidation of a credit union.

Pls' Compl. at 23–29 ¶¶ 24–29, 33–35, 38–41.

Defendant now moves to dismiss Plaintiffs' suit pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Defendant sets forth the following arguments in support of its Motion to Dismiss:

- Res judicata bars this suit in its entirety because the claims in this case either have been litigated, or could have been presented, in *Lafayette I;*

- Collateral estoppel prevents relitigation of the issues in this case which have already been determined by a valid and final judgment;

- Plaintiffs lack standing to bring this action directly because they allege injuries to CapCorp;

- Plaintiffs may not bring a derivative action on CapCorp's behalf, because the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA")[6] grants NCUA all rights of CapCorp and its members;

- Plaintiffs' claims is properly a claim under FIRREA and not under the Federal Tort Claims Act ("FTCA");[7]

- Even if FTCA applied to this case, the discretionary function exception to FTCA would bar this action; and

- Plaintiffs failed to state an actionable tort duty.

## II. *LEGAL STANDARD*

It is well established that "[t]he burden of proving subject matter jurisdiction on a [Fed.R.Civ.P. 12(b)(1)] motion to dismiss is on the plaintiff, the party asserting jur-

isdiction." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

Moreover, the Court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, motions to dismiss "should be granted only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1349, at 192–93 (1990) (motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits").

In resolving a motion to dismiss, "[t]he question is whether in the light most favorable to the Plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief." 5A Charles A. Wright & Arthur R. Miller, Civil 2d § 1357, at 336. The Court must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The Court must further disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969).

## III. *DISCUSSION*

Defendant presents several arguments[8] in support of its Motion to Dismiss. After considering both parties' arguments, the Court shall grant Defendant's Motion to Dismiss on the following alternative grounds:

---

**6.** 12 U.S.C. § 1751 *et seq.* (1998).

**7.** 28 U.S.C. § 1346(b) *et seq.* (1998).

**8.** *See supra* § I.B (listing Defendant's arguments for dismissing Plaintiffs' suit).

A. Res judicata (or claim preclusion) bars Plaintiffs' claims;

B. Even if FTCA applied to this case, the "discretionary function" exception to FTCA would bar Plaintiffs' action.[9]

The Court shall discuss each ground in turn.

## A. *Res Judicata*

█ The doctrine of res judicata (or claim preclusion) bars the relitigation of matters which the parties have already had a full and fair opportunity to litigate in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (res judicata bars a lawsuit involving the same parties and based upon the same cause of action). Defendant contends that this doctrine precludes Plaintiffs' claims because the claims either have been litigated, or could have been presented, in *Lafayette I*. Def's Mem. at 10–15. Plaintiffs assert, however, that they were deprived of a "full and fair opportunity" to litigate their claims because "there was no way" they could have brought their FTCA claims during the pendency of *Lafayette I*. Pls' Mem. at 10–14.

Plaintiffs' argument is untenable. As masters of their own claims, Plaintiffs were in full control of the dates for filing their suit and the FTCA administrative claims. Plaintiffs presumably[10] had all the information they would need to file the *Lafayette I* complaint on November 2, 1996 and to present their FTCA administrative claims. That Plaintiffs chose not to present their FTCA claims in a timely manner should not now operate to afford them a second day in court.

Plaintiffs have failed to articulate any sufficient justifications for their failure to file the FTCA claims in the prior litigation. The records show that Plaintiffs presented their FTCA claims to NCUA on January 31, 1997, after the *Lafayette I* complaint had been filed,[11] and amended the FTCA claims on February 13, 1997. Under FTCA's exhaustion requirements, no court would have jurisdiction to hear Plaintiffs' FTCA claims until either NCUA disallowed the administrative claims or six months had passed from the filing of the administrative claims. 28 U.S.C. § 2675(a). Plaintiffs allege that because NCUA did not act upon Plaintiffs' FTCA claims, no federal court would have jurisdiction over their FTCA claims until August 13, 1997, namely, six months from the filing of the claims. Plaintiffs then argue that because the district court lost jurisdiction in *Lafayette I* on June 17, 1997 (namely, two months before Plaintiffs could have brought their FTCA claims in a district court), Plaintiffs could not have moved to amend the complaint in *Lafayette I* to add their FTCA claims. However, absent a sufficient justification, any delay caused by Plaintiffs' strategic decisions (or failure to pursue a proper course of action) should not now enable them to resurrect their claims arising out of the same core of operative facts relating to NCUA's decisions to place CapCorp into conservatorship and subsequently to liquidate CapCorp.

Even if the delay were justified, Plaintiffs appear to have disregarded the procedural means available to them for remedy-

---

9. Defendant also presented the following arguments as alternative grounds for dismissing Plaintiffs' suit: (1) collateral estoppel prevents relitigation of the issues in this case; (2) Plaintiffs' claim is properly a claim under FIRREA and not FTCA; (3) Plaintiffs lack standing to bring an action in their own right or on CapCorp's behalf; and (4) Plaintiffs failed to plead an actionable tort duty. *See supra* § I.B. (listing Defendant's arguments for dismissing Plaintiffs' suit). The Court need not address these arguments because the bases discussed herein provide independent grounds for dismissal.

10. Plaintiffs have presented nothing to indicate that they lacked any necessary information.

11. *Lafayette I* was filed on November 2, 1996.

ing the situation and allowing them to present their FTCA claims in *Lafayette I*. For example, Plaintiffs could have requested a stay of the *Lafayette I* court action pending expiration of the statutory six-month period. *See* 28 U.S.C. § 2675(a). Instead, Plaintiffs chose to bring two separate actions in federal district courts against the same Defendant (the Government), under theories which they could have raised at the same time had they (1) waited to file suit until the statutory six-month waiting period had expired, (2) filed their FTCA administrative claims earlier than they did, or (3) requested a stay of the *Lafayette I* court action.

In view of the "important public policy that there be an end to litigation[,]" Plaintiffs shall not be permitted to split their case into two different actions. *J. Aron and Co., Inc. v. Service Transp. Co.*, 515 F.Supp. 428, 434 (D.Md.1981) (citing *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Consequently, because Plaintiffs failed to bring all available claims involving

the same circumstances that *could have been raised* against the Government in *Lafayette I*, the doctrine of res judicata precludes Plaintiffs' present claims.[12]

### B. The "Discretionary Function" Exception to FTCA

Defendant asserts that Plaintiffs' claim is properly a claim under FIRREA and not FTCA. Def's Mem. at 10, 26–29. Plaintiffs contend, however, that FIRREA's administrative claims process does not preempt FTCA's administrative claims process. Pls' Mem. at 30–34. While both sides present reasonable arguments, the Court need not address this issue. For purposes of the instant motion, the Court assumes that FTCA is applicable. However, even if FTCA applied to this case, the discretionary function exception to FTCA still would bar Plaintiffs' suit.

Plaintiffs allege that their claims arise not from NCUA's performance of a discretionary function, but from NCUA's violation of specific, mandatory duties while

---

**12.** Plaintiffs cited several cases to buttress their contention that their claims have not been litigated, but these cases are either not pertinent or are distinguishable. First, Plaintiffs cited *Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677 (4th Cir.1994). *Dionne* dealt with two actions, one involving an unreviewed *state* administrative agency proceeding and the other, a subsequent action in *federal* court. Here, both *Lafayette I* and *Lafayette II* were brought in federal district court. Moreover, the *Dionne* court noted that res judicata did not apply to that case because plaintiffs had no control over the fact that they could not have presented constitutional theories in the state administrative agency proceeding. *Dionne*, 40 F.3d at 681–84. In the instant case, Plaintiffs had control over the times for filing their claims.

The second case Plaintiffs cited, *Sterling v. United States*, 85 F.3d 1225 (7th Cir.1996), concerned two actions, the first was an action brought against a government employee, and the second, a suit against the Government. In *Sterling*, the plaintiff had neither litigated nor lost any claim against the Government. *Sterling*, 85 F.3d at 1227. Here, both *Lafayette I* and *Lafayette II* were brought against the Government, and Plaintiffs lost their claims against the Government in *Lafayette I*.

The third case cited, *Golden Pacific Bancorp v. United States*, 15 F.3d 1066 (Fed.Cir.), *cert. denied*, 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994), was a case in which plaintiffs brought their APA claims at the same time and in the same forum as their FTCA claims. In *Golden*, plaintiffs' Fifth Amendment taking claim could not have been brought in the district court because it was a non-tort monetary claim exceeding $10,000, and the district court had no jurisdiction over such claims. Thus, the *Golden* plaintiffs had no other choice than to bring their taking claim in Claims Court. Here, Plaintiffs could have brought both their APA and FTCA claims at the same time had they chosen to do so.

Finally, Plaintiffs cited *Aquatherm Industries, Inc. v. Florida Power & Light Co.*, 84 F.3d 1388 (11th Cir.1996), *cert. denied*, —— U.S. ——, 119 S.Ct. 1356, 143 L.Ed.2d 517 (1999), which stands for the principle that prior resolution of *state* antitrust claims in state court does not bar the bringing of federal antitrust claims in *federal* court. The federal court action was stayed pending resolution of the state court appeal. While the plaintiffs in *Aquatherm* had no control over the jurisdiction of two separate courts, Plaintiffs in this case did.

managing CapCorp. Pls' Compl. at 25–26 ¶ 29. Those duties include a directive that NCUA staffers "explore all possible alternatives to liquidation" and "consult with the NCUA Board." *Id.* Plaintiffs allege that NCUA staffers nonetheless intentionally effected a *de facto* liquidation of CapCorp contrary to the NCUA Board's directive and management practices. *Id.* at 22 ¶ 20. This raises the question whether such allegations should be dismissed under the discretionary-function exception to FTCA.

Under FTCA, the Government waives its sovereign immunity with respect to certain torts committed by government employees acting within scope of their employment. 28 U.S.C. § 1346(b) (1998). However, FTCA contains an exception to this broad waiver of immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). This means that the discretionary-function exception exempts "acts of discretion in the performance of governmental functions or duty[,] . . . [and that] [n]ot only agencies of government are covered but all employees exercising discretion." *Dalehite v. United States,* 346 U.S. 15, 33, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (quotation and citation omitted).

■ The Supreme Court has established a two-prong analysis for identifying protected discretionary functions. First, when evaluating a claim under FTCA, a court must inquire as to whether the governmental action complained of "involves an element of judgment or choice" rather than mandatory duties. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *see also United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Williams v. United States,* 50 F.3d 299 (4th Cir.1995). Second, a court must determine whether the choice or judgment

is one "susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267.

In light of this Supreme Court guidance, courts have held that "oversight of financial institutions generally entails discretion of the sort protected by the exception." *See Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1141 (10th Cir.1999) (citing *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. 1267). Moreover, the Supreme Court has stated that "[d]ay-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267. Decisions as to whether to place a failed credit union into conservatorship or to liquidate the credit union are the type of "management of banking affairs" that involves policy-based judgment protected by the discretionary-function exception. *See id.* at 324–25, 111 S.Ct. 1267; *see also Franklin,* 180 F.3d at 1141.

Moreover, the Congressional intent that NCUA exercise discretion in regulating credit unions is evident in the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1751 *et seq.,* as amended by FIRREA. FCUA expressly provides that as conservator, the NCUA Board may

> immediately take possession and control of the business and assets of any insured credit union in any case in which . . . *the Board determines that such action is necessary* to conserve the assets of any insured credit union or to protect the [National Credit Union Share Insurance] Fund or the interests of the members of such insured credit union.

*Id.* § 1786(h)(1) (emphasis added).

In addition, once appointed either conservator or liquidating agent, the NCUA Board

> shall, as conservator or liquidating agent, and by operation of law, succeed to . . . *all rights, titles, powers, and privileges of the credit union,* and of any member, accountholder, officer, or di-

rector of such credit union with respect to the credit union and the assets of the credit union.

*Id.* § 1787(b)(2)(A) (emphasis added).

FCUA also grants NCUA the incidental power to

(i) exercise *all powers and authorities specifically granted to conservators or liquidating agents,* respectively, under this Act and such incidental powers as shall be necessary to carry out such powers; and

(ii) take any action authorized by this Act which *the Board determines is in the best interests of the credit union, its account holders, or the Board.*

*Id.* § 1787(b)(2)(J) (emphases added). A reasonable reading of the statute amply supports the view that FCUA grants NCUA and its staff broad discretion in managing a failed financial institution.

 Plaintiffs insist that NCUA's staffers were not performing discretionary functions. Pls' Compl. at 25–26 ¶ 29. However, Plaintiffs have failed to identify any specific regulations governing NCUA's daily management "that are sufficiently specific and mandatory to eliminate the discretion that such management 'plain[ly]' entails." *Franklin,* 180 F.3d at 1131 (alteration in original). It is not sufficient that Plaintiffs allege vague, generalized failures to follow mandatory rules. *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. 1267. In order to defeat the first prong of the discretionary function test, Plaintiffs must identify a breach of a specific mandatory statute, regulation, or policy which prescribes a specific course of conduct. *Baum v. United States,* 986 F.2d 716, 720 (4th Cir.1993) ("The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action.").

Here, Plaintiffs made only a conclusory allegation that NCUA's staffers negligently liquidated CapCorp without getting the required approval of the NCUA Board, in violation of directions from the NCUA Board, and without heeding the advice of NCUA's own general counsel that liquidating CapCorp's portfolio was "potentially devastating." Pls' Compl. at 25–26 ¶ 29. These allegations are not adequate to abrogate the discretionary-function exception. *See Franklin,* 180 F.3d at 1130–34 (plaintiffs' twenty breaches alleged were not specific and mandatory and other breaches were not causally related to the harm).

Nor is it sufficient for Plaintiffs merely to claim that NCUA staffers failed to follow the NCUA Board's broad directive that NCUA staffers "explore all possible alternatives to liquidation." Pls' Compl. at 25–26 ¶ 29. This type of language has been held to be precatory rather than mandatory. *See Franklin,* 180 F.3d at 1131–32.

In *Franklin* the plaintiffs, who were stockholders of a savings and loans association ("Association"), sued the United States and the Resolution Trust Corporation ("RTC") in tort for RTC's conduct as the Association's conservator that allegedly caused the Association to lose millions of dollars in potential profits. *Id.* at 1126–28. The plaintiffs in *Franklin* identified a specific mandate in the conservatorship order that RTC conserve and not liquidate the Association. *Id.* at 1126–27. The *Franklin* plaintiffs alleged "that the RTC disregarded [the] specific mandate [in question], ignored various narrower mandates in its own manuals governing conservatorships, and breached its fiduciary duties as a conservator by intentionally effecting a de facto liquidation of the Association." *Id.* at 1128. The plaintiffs also argued "that the RTC breached twenty specific, mandatory requirements detailed in several agency manuals and directives which guided RTC employees in managing institutions the RTC was appointed to conserve." *Id.* at 1131. The *Franklin* court concluded that "none of the twenty provisions that the RTC [had] allegedly violated [could] enable plaintiffs to show that their asserted injuries [were] based upon nondiscretionary conduct." *Id.* at 1133–34.

The *Franklin* court held that a directive specifying that "[a]ll the alternatives must be weighed comprehensively and objectively to determine the course of action in the best interest of the RTC" is not sufficiently "specific and mandatory." *Id.* at 1131–34. The court also held that a policy directing RTC staff members to "take the necessary steps to ensure that asset integrity and value are maintained in order to maximize sales opportunities" is non-mandatory. *Id.*

Like the *Franklin* plaintiffs, Plaintiffs in this case have failed to allege violations of directives or regulations that are sufficiently "specific and mandatory." Accordingly, this Court shall "not inquire into the actual state of mind or decisionmaking process of federal officials charged with performing discretionary functions." *Id.* at 1135.

IV. *CONCLUSION*

For the foregoing reasons:

1. Defendant's Motion to Dismiss is GRANTED.

2. Plaintiffs' Complaint is hereby DISMISSED WITH PREJUDICE.

3. Judgment shall be entered by separate Order.