**UNITED STATES of America,**
**Plaintiff,**

v.

**Bernie D. METZ, Defendant.**

**Criminal Action No. 5:09CR51.**

United States District Court,
N.D. West Virginia.

Oct. 18, 2011.

Michael D. Stein, Robert H. McWilliams, Jr., U.S. Attorney's Office, Wheeling, WV, for Plaintiff.

Brendan S. Leary, Federal Public Defender Office, Wheeling, WV, Brian J. Kornbrath, Federal Public Defender Office, Clarksburg, WV, for Defendant.

*MEMORANDUM OPINION AND ORDER ADDRESSING MEMORANDUM OF THE UNITED STATES REGARDING THE IDENTITY OF ENTITIES ENTITLED TO STATUS AS "VICTIMS" FOR PURPOSES OF COURT–ORDERED RESTITUTION*

FREDERICK P. STAMP, JR., District Judge.

## I. *Background*

The defendant in the above-styled criminal action, Bernie D. Metz ("Metz"), pleaded guilty to Counts One and Two of the information charging her with embezzlement from a credit union by an employee, in violation of 18 U.S.C. § 657, and money laundering, in violation of 18 U.S.C. § 1957.[1] Metz was sentenced and judg-

---

1. This Court originally accepted the defendant's plea of guilty to Counts One and Two on January 4, 2010. The plea agreement entered into by the parties included a binding agreement by the government and the defendant, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence was the appropriate disposition of the case. Following a hearing regarding the binding nature of the plea agreement, this Court rejected the binding sentence of 87 months contained in the plea agreement and advised the defendant that she had an opportunity to withdraw her plea. A status and scheduling conference was held on July 22, 2010, at which time the defendant advised this Court that she wanted to proceed with her guilty plea to the two-count information without the benefit of a plea agreement. In an order

ment entered against her on February 24, 2011. As part of her judgment, Metz was ordered to make restitution to two victims in the amount of $4,857,869.00. J. in a Criminal Case 5.

Although the Center Valley Federal Credit Union ("CVFCU"), Metz's former employer, is the statutorily recognized victim of her embezzlement, the United States Attorney's Office ("USAO"), in an effort to ensure that all credit union members with provable losses resulting from the defendant's criminal activity would be reimbursed, attempted to identify those members who did not believe their account discrepancies had been satisfactorily resolved by the National Credit Union Association ("NCUA") Board following its liquidation of the CVFCU. Recognizing its obligation to assist in the identification of individuals entitled to be compensated for their losses, the USAO mailed over 3,000 notifications to every identifiable customer of the CVFCU, asking those individuals who had unresolved account issues or unexplained financial losses that they believed were the result of the defendant's criminal activity to complete and return a claim form explaining the basis for those conclusions. The USAO received approximately thirty-eight responses from depositors who believed they were entitled to restitution because they had been directly harmed by the defendant's crimes. Each of these claimants had already been advised by the NCUA Board that credit union records relative to their accounts did not support their claims.

Prior to the defendant's sentencing hearing, the United States filed a memorandum concerning the issue of restitution and the claims of the individual depositors. In this memorandum, the government ar-

gues that the NCUA Board is the only entity that is entitled, as a matter of law, to status as a victim that may receive restitution.[2] The United States' memorandum acknowledges, however, that the Benevolent Protective Order of Elks Lodge No. 2029 ("Elks Lodge") was a direct victim of the defendant's embezzlement. The government also states that it analyzed the remaining thirty-seven claimants, but was unable to locate documentary evidence to establish that money from these accounts went directly to the defendant.

At the sentencing hearing, the undersigned judge heard oral argument regarding the amount of restitution to be paid by the defendant, to whom restitution is to be paid, and the priority of payments. On February 24, 2011, the Court issued an order confirming the pronounced rulings of the Court at the sentencing hearing in regards to restitution. This Court ordered the defendant to make restitution to the following payees in the following amounts: (1) NCUA Board in the amount of $4,657,869.00; and (2) Elks Lodge in the amount of $200,000.00. With regard to other potential victims, this Court set aside a period of ninety days during which the United States, through the liquidating agent or other investigators, could bring to this Court's attention other parties who may be entitled to restitution. This Court ordered the United' States to prepare a pleading or memorandum discussing whether the approximately thirty-eight individuals who previously filed claims are entitled to restitution.

In response to this Court's order, on March 16, 2011, the United States filed a memorandum regarding the identity of entities entitled to status as "victims" for

dated July 22, 2010, this Court reaffirmed the defendant's plea of guilty as to Count One and Count Two of the information.

2. The NCUA is an independent federal agency that oversees all federally chartered credit unions. The NCUA Board is the liquidating agent for the NCUA. 12 U.S.C. § 1751 *et seq.*

purposes of court-ordered restitution and submission of information discussing claimants. Four binders containing the records analyzed by the government were also delivered to this Court. In its memorandum, the United States sets forth the following: (1) by operation of federal law, the NCUA Board, as liquidating agent, stepped into the shoes of the CVFCU and is therefore the only entity entitled to status as a victim for purposes of restitution; (2) the individual claimants, with the exception of the Elks Lodge and "DV",[3] cannot prove that they were directly and proximately harmed as a result of the defendant's embezzlement; and (3) specific statutory and regulatory procedures exist for the submission of claims to the NCUA Board and the resolution of account discrepancies upon the liquidation of a credit union, which preclude the necessity for any further review by this Court. The government also sets forth a brief summary of each individual's claim and the result of any investigation as to that claim.

This Court has reviewed, in detail, the memoranda of the United States and four notebook binders containing the claimants' records. For the reasons set forth below, this Court must conclude that there is no direct provable loss resulting from the defendant's crime to any of those credit union members who submitted claims to the United States Attorney's Office.

## II. *Applicable Law*

▮▮▮ The Crime Victims' Rights Act ("CVRA"), Title 18, United States Code, Section 3771, defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). Only a victim of the offense of conviction is entitled to receive restitution. 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2).[4] The district court cannot necessarily order restitution to all individuals harmed by a defendant's criminal conduct. *See United States v. Broughton–Jones,* 71 F.3d 1143, 1148–49 (4th Cir.1995). "For a person to be considered a victim under § 3663, the act that harms the individual must be either conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense of conviction." *United States v. Blake,* 81 F.3d 498, 506 (4th Cir.1996) (citing *Broughton–Jones,* 71 F.3d at 1148–49). When a crime is committed against a financial institution, the victim is the institution, not its depositors, creditors, employees, or shareholders. *See Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir.1979) ("As a general rule, wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery."); *Downriver Cmty. Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754, 764 (10th Cir.1989) ("Any remedy for fraudulent representations that affects, or potentially affects, all creditors belongs to the receiver, who asserts such claims for the benefit of all creditors."); *In re Longhorn Sec. Litig.,* 573 F.Supp. 255, 272 (W.D.Okla.1983) ("As a general rule, wrongs committed by a

---

**3.** Both of these claimants have been reimbursed by the NCUA Board.

**4.** Courts have interpreted the term "victim" as it appears in the CVRA in the context of two different victims' statutes containing similar defining language—the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of 1986 ("MVRA"), 18 U.S.C. § 3663A. The Fourth Circuit's interpretation of the "direct and proximate harm" language contained in both statutes provides a helpful guide for interpreting the meaning of the nearly identical language contained in the CVRA.

bank's officers or directors that injure all depositors and creditors alike create a liability which is an asset of the bank itself and for which only the bank or its receiver may recover.").

Title 12, United States Code, Section 1787 provides: "Upon its finding that a Federal credit union insured under this subchapter is bankrupt or insolvent, the [NCUA] Board shall close such credit union for liquidation and appoint itself liquidating agent therefor." 12 U.S.C. § 1787(a)(1)(A). "As the successor to the credit union, the NCUA Board shall, as liquidating agent and by operation of law, succeed to all rights, titles, power, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union." 12 U.S.C. § 1787(b)(2)(A)(1); 12 C.F.R. § 709.2(a). Further, the NCUA Board, as liquidating agent, has the authority to determine claims and prescribe regulations regarding the allowance or disallowance of claims. 12 U.S.C. § 1787(b)(3)(A) and (b)(4). Except as otherwise provided in 12 U.S.C. § 1787(b), no court will have jurisdiction over any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the NCUA Board has been appointed liquidating agent. 12 U.S.C. § 1787(b)(13)(D).

### III. *Discussion*

In preparing the government's memorandum regarding the identify of entities entitled to status as "victims" for purposes of court-ordered restitution, the USAO and investigators spent a significant amount of time analyzing the credit union records of the thirty-eight claimants and communicating with the NCUA Board about these members' accounts. Members who submitted claims relating to the status of their accounts were provided the opportunity to meet personally with the USAO and the investigating agent. During those meetings, it was explained that the NCUA Board succeeded to the credit union's status and rights as the victim of the defendant's crime and is therefore entitled to receive all restitution resulting from the failure of the credit union. These members were further advised that the USAO had informed the NCUA Board of their concerns, but that its extensive review had failed to disclose any documentary evidence supporting their specific claims.[5] In the memorandum submitted on March 16, 2011, the United States provides a brief summary of each of the thirty-eight claims, as well as the supporting documentation that was analyzed in relation to these claims.

■ Because the NCUA Board succeeds to all rights of a liquidated credit union and · its members with respect to the assets of the credit union, the NCUA Board assumed all rights of the CVFCU, including its status as the statutorily recognized victim of the defendant's embezzlement. Others adversely affected by the institution's failure, such as depositors and credit union members, are recognized as claimants and as such, they are entitled to have their losses compensated only by the NCUA Board pursuant to the statutory and regulatory framework established for such contingencies. *See* 12 U.S.C. § 1787(b)(3); 12 C.F.R. §§ 745.201–203. The Federal Credit Union Act and accom-

---

5. In analyzing the claims of the credit union members, the USAO urged the NCUA Board to recognize the inherent contradiction in relying upon the same credit union account records that the defendant had admittedly manipulated and falsified to support subsequent determinations by the NCUA Board that these members had suffered no financial harm as a result of the defendant's crime.

panying regulations provide for a mandatory administrative review scheme for members to submit their claims and seek resolution of account discrepancies upon the liquidation of a credit union. Thus, the NCUA Board, as liquidating agent, assumes the legal right and responsibility to collect all obligations and money due to the CVFCU and its members and to make appropriate payouts from all assets pursuant to the payout priorities set forth in 12 C.F.R. § 709.5.

■ In this case, the NCUA Board provided each member of the CVFCU an opportunity to submit documents in support of claimed financial losses. However, only two of the thirty-eight claimants identified by the OSAO submitted documentary support for their claims to the NCUA Board.[6] The majority of the claimants did not avail themselves of the mandatory administrative remedies to pursue their claims. For this reason, this Court lacks jurisdiction to address the validity of these members' claims. *See Lafayette Fed. Credit Union v. Nat'l Credit Union Admin.*, 960 F.Supp. 999, 1005 (E.D.Va.1997) (holding that the court lacked jurisdiction over the plaintiffs' claims because the plaintiffs failed to meet the exhaustion requirements of the Financial Institutions Reform, Recovery, and Enforcement Act).

■ Even if restitution could be ordered for individual members of the CVFCU, the lack of documentation makes it virtually impossible to definitively determine whether these claimants are owed money, and if so, how much. As stated above, all but two of the claimants identified by the USAO have failed to disclose any documentary evidence to prove that the defendant embezzled funds from their accounts. As explained in the United States' memorandum, many of the claimants report incorrect account balances, unauthorized withdrawals, and unexplained losses, but most of them were unable to produce any records that would demonstrate a provable loss directly attributable to the defendant's crimes. Multiple claimants allege that payments were not credited to their accounts or loans, that cash deposits disappeared, and that unauthorized charges were made, but these claims are based on speculation rather than documentation. Three former employees of the CVFCU submitted claims for severance pay because they lost their jobs when the credit union closed. Another individual claimed that the defendant, when writing his vehicle loan, promised him she would use part of the loan to pay for his vehicle insurance. When this claimant was in a vehicle collision several years later, he learned that no such insurance had ever been purchased. Two other claimants, who were not members of the CVFCU, argued that they were owed money for products and services delivered to Metz's restaurant called "Roadworthy." While this Court acknowledges that these claimants may have suffered financial harm as a result of the closing of the CVFCU, either the reported account discrepancies cannot be verified, or the claimants cannot be considered "victims" for purposes of awarding restitution.[7] Thus, these claim-

---

6. The Elks Lodge and claimant "DV" did provide documentary evidence for their claims, and the NCUA Board has reimbursed both of these claimants to the extent provided by statute.

7. Claimant "CFS" requested restitution based on products sold on credit to the defendant's Roadworthy Restaurant. In its memoran-

dum, the United States explains that CFS was, not considered by the government as eligible for restitution since its harm was not directly and proximately caused by the counts of conviction. The documents provided to this Court regarding CFS's claim, however, do not include any correspondence from the government advising CFS of this determination.

ants are not entitled to court-ordered restitution.

Based on the fact that the NCUA Board, as liquidating agent, is the entity entitled to legal status as victim for purposes of court-ordered restitution, as well as the fact that no evidence has been uncovered to connect certain of the members' alleged losses to the defendant's embezzlement, this Court cannot order the defendant to make restitution to these claimants. Further, because these claimants failed to exhaust their mandatory administrative remedies, this Court is without jurisdiction to hear their disputes.

### IV. *Conclusion*

For the reasons set forth above, this Court finds that the claimants discussed in the United States' memorandum are not entitled to court-ordered restitution.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein. The United States Attorney's Office is directed to transmit a copy of this memorandum opinion and order to each of the claimants.